**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

IN RE:                                                                                            CASE NO. 05-54401

**CHARLES M. CRADY**

**DEBTOR**                                                                                     **CHAPTER 13**

**MEMORANDUM OPINION**

This matter came before the court on the creditor U.S. Bank, NA's ("Bank") Motion to Vacate the November 28, 2005 Order of Confirmation (Doc. #36). The court heard arguments of counsel at a June 1, 2006 hearing on the motion and the objections thereto filed on behalf of the Debtor Charles M. Crady ("Debtor") and the Trustee Beverly M. Burden ("Trustee") (Docs. 42, 43, and 50). At the hearing and by order entered shortly thereafter (Doc. 55), the court directed the parties to supplement the record as follows: the Debtor was allowed to further address the sufficiency of the notice provided Bank regarding the bankruptcy (Doc. 54) and the Bank was to provide an affidavit from its employee or agent concerning the methods by which the Bank tracks bankruptcy notices mailed to a certain post office box located in St. Louis, Missouri (Doc. 62). After the required supplementation, the matter was to be submitted to the court for decision.

**Factual and Procedural Background**

According to his Chapter 13 petition (Doc. 1), the Debtor is indebted to the Bank

in the sum of $43,408.13. The Bank's debt is secured by a 1990 Clayton Mobile Home, VIN/HIN CLM09474TN, in which the Debtor resides, situated on a lot in Bath County, Kentucky. The real estate on which the mobile home sits is not subject to the Bank's security interest. The Debtor's Chapter 13 petition places the value of the motile home at $2,000.00. In addition, the Bank holds a first mortgage on 40 acres of land owned by the Debtor, also in Bath County, Kentucky, which the Debtor values at $45,000.00. The Bank filed its proof of claim which states that the amount of the secured debt owed to it by Debtor is $48,917.21.

The Debtor filed his Chapter 13 plan with his petition (Doc. 2), later amended on November 7, 2005 (Doc. 9), proposing that the 40 acre tract in Bath County be surrendered to the Bank in satisfaction of the debt owed. Upon confirmation of the plan, the Bank would then be required to release its lien on the mobile home. The Bank filed no objection to the Debtor's proposed amended plan, the Chapter 13 Trustee recommended confirmation, and the plan was in fact confirmed on November 28, 2005 (Doc. 15).

On March 16, 2006, the Bank filed the subject motion to vacate the order of confirmation, on grounds that the plan provision to surrender the 40-acre Bath County property in full satisfaction of the debt amounts to a stripping of the Bank's mortgage and title lien as to the mobile home. The Bank further claimed that it did not receive notice of the Debtor's Chapter 13 bankruptcy nor of the proposed plan prior to its confirmation, thereby precluding the Bank from asserting an objection to confirmation. However, the Bank acknowledges it received actual notice of the Chapter 13 case prior to the bar date for claims, enabling it to file its secured claim in a timely manner.

2

The Debtor disputes the Bank's claim of lack of notice. The matrix of creditors attached to the Debtor's petition sets forth US Bank's address as P.O. Box 790408, St. Louis, MO 63179-0408 and the record reflects that Notice of the Debtor's Chapter 13 Bankruptcy Case, Meeting of Creditors and Deadlines (Doc. 5) was served on US Bank by mailing same to the specified address on October 13, 2005. While the Bank does not dispute that the St. Louis post office box is in fact a valid address at which the Bank receives mortgage payments, the Bank complains that the post office box was not the proper address to which notices and other filings in the bankruptcy case should have been sent. Accordingly, the Bank avers that the order of confirmation should be vacated as violative of due process and not binding on it as a fully secured creditor.

## Discussion

As a preliminary matter, the court notes that, despite having been ordered to provide an affidavit informing of the procedure and steps taken upon receipt of bankruptcy notices sent to the Bank's St. Louis post office box, and to outline the box custodian's instructions as to disposition of pleadings received in bankruptcy cases, few details of any such process were provided. The only information in the submitted affidavit of Amanda Sanders regarding bankruptcy notices was the following: approximately 30 items per week received in the box are bankruptcy notices and such notices are "'tagged' with a specific bankruptcy notation label (3 "X 1" purple label)." (Doc. 62). No information was included about what happens to the notices after they are "tagged." The affidavit also states that it has no evidence that it received any notices regarding the Debtor's bankruptcy. Assuming the information complies with the court's order of June 5, 2006, the process described falls well short of what the court

3

would expect to see a sophisticated lender implement for the receipt and proper dissemination of important bankruptcy court notices.

Although the Bank brings its motion to vacate under the authority of Federal Rule of Civil Procedure 60(b), the court need not determine whether the standards of 60(b) are met as the bottom-line basis for the Bank's motion is that it did not receive notice of the Debtor's Chapter 13 bankruptcy or of the proposed plan and confirmation hearing. If the Bank's contention about lack of notice is true, then it is likely that an examination of the matter under the standards of Rule 60(b) would constitute grounds to vacate the order of confirmation. Unfortunately, the court is not persuaded that the mailing of court notices to the post office box address provided by the Debtor, one at which the Bank claims to receive mortgage payments only, failed to provide sufficient notice or was otherwise improper.

The Bank's complaint that it did not receive notices of the bankruptcy or of the confirmation process when the mailings were sent to what the Bank deems an incorrect, albeit valid address, is not unique. Indeed, the Debtor offered several cases in which creditors complained to courts about failure to receive notice under similar circumstances: **In re Rayborn,** 307 B.R. 710 (Bankr. S.D.Ala. 2002); **In re Worthing,** 24 B.R 774 (Bankr. D.Conn. 1982) and **In re Ray Brooks Machinery Co.,** 113 B.R. 56 (Bankr. M.D.Ala. 1989). In **Rayborn,** supra., the court observed that the law is clear "that where mail is properly addressed, stamped and deposited in the postal system, there arises a rebuttable presumption that the notice was received by the addressee." **Rayborn,** 307 B.R. at 722. The law as recognized by the **Rayborn** court has likewise

been applied by bankruptcy courts in the Sixth Circuit.  **See Simpson v. Jefferson Standard Life Ins. Co.,** 465 F.2d 1320, 1323 (6th Cir. 1972).

The court record of the herein case reflects that the Debtor's petition, plan and amended plan were all mailed to the creditors listed on the matrix, on which was listed the Bank's St. Louis P.O. Box address (Docs. 5 and 9).  In determining whether the presumption can be rebutted, a court must consider all of the facts and circumstances to determine whether it is more likely that the [notice] was received or that it was lost in the mail.  **In re O'Bryan,** 246 B.R. 271 (Bankr. W.D.Ky. 1999).  The Sixth Circuit found that the presumption was rebutted under circumstances in which (1) a creditor's name did not appear on the mailing matrix; (2) two other similarly situated creditors did not receive the same notice; and (3) that there was no record of whether the creditor's address was on the labels used to mail the notice.  **In re Yoder Co.,** 758 F.2d 1114, 1118 (6th Cir. 1985).  As in the **O'Bryan** case, in which the court for the Western District of Kentucky found the presumption of receipt *not* rebutted, the Bank here simply denies receipt of any notice and presented no evidence to support its denial.  A bare denial, without any information regarding what, if any, steps are generally undertaken by the P.O. Box custodian to forward any bankruptcy notices to appropriate personnel within the Bank corporate structure or facts to support non-receipt, is insufficient to rebut the strong evidence of record that copies of the bankruptcy notices were mailed to the Bank.

The Bank's argument that it was the Debtor's failure to list its Owensboro address on the mailing matrix which created or significantly contributed to the notice

5

breakdown is also unavailing. In addition to the cases cited by the Debtor, the court's review of similar cases reveals that such complaints have generally fallen on deaf ears. A fact of life for large modern financial organizations is the utilization of different addresses and departments to handle different types of financial transactions. **See In re Perviz,** 302 B.R. 357 (Bankr. N.D.Ohio 2003). "Nevertheless, while an octopus may have eight legs, it is still the same octopus. As a result, bankruptcy law not only requires, but demands, that companies, whether large or small, have in place procedures to ensure that formal bankruptcy notices sent to an internally improper, but otherwise valid, corporate address are forwarded in a prompt and timely manner to the correct person/department." **Perviz,** 302 B.R. at 367. "This rule has been universally followed by other bankruptcy courts, and is really just an extension of the principle that corporations are expected to have in place procedures to ensure that they comply with all areas of the law." **Id.** (citations omitted).

Because the court has determined that the Bank did receive proper notice of the bankruptcy filing as well as the terms of the original and amended proposed plan prior to confirmation of same, the court declines to vacate the confirmed plan on the grounds raised by the Bank. Section 1327 of the Bankruptcy Code states that the "provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. 1327(a). An order confirming a Chapter 13 plan is res judicata as to all justifiable [sic] issues that were, or could have been, decided at the confirmation hearing. **In re Wellman,** 322 B.R. 298, 301 (6th Cir.

BAP 2004 (quotation omitted). Section 1327 precludes a creditor from asserting, after confirmation, any other interest than that provided for it in the confirmed plan. *Id.* Because the Bank had both notice and opportunity prior to confirmation to raise the matters regarding Debtor's Amended Plan about which it now complains, it is precluded from asking the court to consider such matters now.

The court will enter a separate Order incorporating the terms of this Memorandum Opinion and overruling the Bank's Motion to Vacate November 28, 2005 Order of Confirmation.

Copies to:

J.D. Kermode, Esq.
Septtimous Taylor, Esq.
Beverly M. Burden, Trustee

7

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Joseph M. Scott*
**Bankruptcy Judge**
Dated: Friday, July 14, 2006
(jms)